UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH VASAPOLLI,                        :

    Plaintiff                            :        CIVIL ACTION NO. 3:26-613

    v.                                   :            (JUDGE MANNION)

THE PRESIDENT OF THE                     :
UNITED STATES, *et al.*,

                                         :

    Defendants                           :

                                         :

### MEMORANDUM

Pending before the court is the report of Magistrate Judge Susan E. Schwab which recommends that the plaintiff's "Motion for Emergency Temporary Restraining Order" (Docs. 3, 22) and "Emergency Master Motion for Injunctive Relief" (Docs. 7, 23) be denied and the plaintiff's amended complaint (Doc. 21) be dismissed without prejudice. (Doc. 25). No objections have been filed to the report. Upon review of the report and all relevant materials, the report and recommendation will be adopted as modfied herein.

Where no objection is made to a report and recommendation, the court should, as a matter of good practice, satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. Fed. R. Civ. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply*

*Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

On February 13, 2026, the plaintiff, proceeding *pro se*, filed a one-page complaint in the United States District Court for the Eastern District of Pennsylvania. In that complaint, the plaintiff claimed the President of the United States, the U.S. Department of Justice ("DOJ"), the Federal Communications Commission ("FCC"), and the Federal Election Commission ("FEC") violated his Fourth, Fifth, and Eighth Amendment rights and committed battery and kidnapping. (Doc. 2). Without any detail, the plaintiff alleged that he was "unlawfully seized and placed in a mental institution against his will, held in handcuffs for five (5) hours and injected with GHB[1] without consent." The plaintiff alleged that this non-consensual

---

[1] Gamma hydroxy butyrate ("GHB") is a central nervous system depressant used in some countries as an anesthetic agent. It has no approved use in the United States where it is sometimes abused as an illicit drug. Its street names include *grievous bodily harm, liquid ecstasy* and *organic quaalude*. Gamma Hydroxy Butyrate. Taber's Cyclopedic Medical Dictionary 810 (19th ed. 2001).

- 2 -

medical intervention directly caused him to have eleven (11) cardiac events and subsequent surgeries. Despite formal notice via SAM.gov[2] and notifications to the DOJ, FCC, and FEC, the plaintiff alleged that the defendants refused to provide restitution or cease interference. The plaintiff sought $200 million in damages, as well as an emergency injunction to provide him immediate medical funding for his eleventh heart surgery. In addition to his complaint, the plaintiff filed a motion for emergency temporary restraining order (Doc. 3), and later filed an "Emergency Master Motion for Injunctive Relief" (Doc. 7).

By order dated March 11, 2026, the Honorable John F. Murphy directed that the plaintiff's action be transferred to this district based upon a finding that the record as a whole, including numerous exhibits filed by the

---

[2] The System for Award Management ("SAM.gov") is an official website of the U.S. Government used for various reasons, including to register to do business with the U.S. Government; update, renew, or check the status of an entity registration; search for entity registration and exclusion records; search for assistance listings (formerly CFDA.gov), wage determinations (formerly WDOL.gov), contract opportunities (formerly FBO.gov), and contract data reports (formerly part of FPDS.gov); view and submit BioPreferred and Service Contract Reports; and access publicly available award data via data extracts and system accounts. *See* https://sam.gov/about/this-site (last accessed May 21, 2026). There is no indication that the SAM.gov website is used to provide notice to federal government agencies regarding potential legal claims against them.

plaintiff (Docs. 12-17), demonstrated that a majority of events giving rise to the plaintiff's claims occurred in this district. (Doc. 19). In accordance with Judge Murphy's order, the action was transferred that same day.

Also on March 11, 2026, the plaintiff filed a document titled "Plaintiff's Narrative Statement in Support of Amended Complaint." (Doc. 18).[3] In this document, the plaintiff provides that he is bringing the action against the original defendants, as well as "Erie Insurance, Matt Puzio (Hideout Lead Security), Hide Out Public Safety, Wayne County Sheriff, Hide Out Attorney, and others". He alleges a "coordinated pattern of retaliation that violated constitutional rights (42 U.S.C. §1983), whistleblower protections (5 U.S.C. §2302(b)(8)), and caused severe financial, physical, and emotional harm to Plaintiff and his family."

In the introduction to his narrative, the plaintiff alleges that he was "an independent presidential candidate in the 2024 election," and that his campaign "exposed gaming and tax corruption through public posts and

---

[3] This document was referenced in the procedural history of the pending report, but the claims made therein were not considered in conjunction with the plaintiff's amended complaint. It appears to the court that, although filed separately, this document was intended to be considered alongside the plaintiff's amended complaint. Although the amended complaint was filed on the docket one day later, both documents are dated the same day. Giving the plaintiff the benefit of the doubt, the court considers the narrative as part and parcel of the plaintiff's amended complaint.

complaints, triggering sabotage that led to seized winnings ($825,000+), unreported withholdings ($380,000+ taxes), physical assault, 11 heart attacks (SSA onset November 6, 2024, award October 3, 2025, $9,860 backpay lump sum for May-September 2025), and delayed disability benefits." The plaintiff claims the effects of this "rippled to his children . . . and business partner" resulting in damages in the range of $298-$600 million.

Upon review of the narrative's specific factual allegations, not many are connected to the named defendants. The narrative contains five (5) lettered factual paragraphs. In the first paragraph addressing his presidential candidacy, the plaintiff mentions two (2) of the named defendants. The plaintiff alleges that he "launched an independent presidential bid as a non-elite challenger, filing with the FEC in September 2024," and that the President of the United States was tagged in a post "on Bitcoin/AI-driven GDP growth" on May 26, 2025. These allegations alone do nothing to state a claim against either the FEC or the President of the United States.

In any event, to the extent the plaintiff attempts to assert a claim for damages against the FEC based upon his filing with that agency, a federal court is without jurisdiction to entertain a suit for money damages against the United States or its agencies unless sovereign immunity has expressly been

waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The plaintiff appears to set forth two (2) legal claims against the defendants: a whistleblower retaliation claim pursuant to 5 U.S.C. §2302(b)(8) and a *Bivens*[4]/[5] claim.[6] In considering these claims, initially, there is no sovereign immunity waiver for claims of constitutional violations. *See F.D.I.C. v.* Meyer, 510 U.S. 471 (1994) (holding that a *Bivens* suit may not be maintained against the United States or its agencies). Therefore, to the extent the plaintiff is attempting to bring a *Bivens* claim against the FEC, that claim will be dismissed with prejudice.[7]

---

[4]Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[5] The plaintiff cites 42 U.S.C. §1983 as his cause of action. Section 1983 does not apply to federal officials. However, the same principles that apply to §1983 also apply to a *Bivens* action against federal officals. Construing the plaintiff's complaint liberally, the court considers the plaintiff's constitutional claim for monetary damages against the federal defendants under *Bivens*.

[6] The plaintiff also sets forth a state law bad faith claim pursuant to 42 Pa.C.S. §8371. However, as to this claim, the plaintiff specifically names only Erie Insurance.

[7] Although he sets forth no factual allegations against them in this narrative or amended complaint, this would apply equally to the extent that the plaintiff names the DOJ and FCC. Thus, the plaintiff's complaint wil be dismissed with prejudice with respect to these defendants as well.

Moreover, as to any purported claim of whistleblower retaliation brought by the plaintiff pursuant to the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302, the Third Circuit outlined in *Fleeger v. Principi*, 221 F. App'x 111 (3d Cir. 2007) the requirements for a federal whistleblower claim:

> The WPA protects **federal employees** against agency reprisal for whistleblowing activities, such as disclosing illegal conduct, gross mismanagement, gross waste of funds, or acts presenting substantial dangers to health and safety. See 5 U.S.C. §2302(b)(8). The Civil Service Reform Act ("CSRA") provides the exclusive remedy for claims brought pursuant to the WPA. *See, e.g., Richards v. Kieman*, 461 F.3d 880, 885-86 (7th Cir. 2006) (citing cases).

*Id.* at 115-16 (emphasis added). Here, there is no indication from the plaintiff's filings that he is or ever was a federal employee as defined in the statute. To the extent he does not fall under the statutory definition of an "employee," he is not eligible to bring a claim under the WPA. *See* 5 U.S.C. §2105 (defining "employee"). Moreover, there is no indication from the plaintiff's complaint that he exhausted his administrative remedies under the relevant provisions of the CSRA, 5 U.S.C. §2302(b)(8).[8] *See Stella v. Mineta*,

---

[8] Pursuant to the CSRA, retaliation against a "whistle-blower" is a "prohibited personnel practice," and an allegation of a "prohibited personnel practice" may be submitted to the Office of Special Counsel ("OSC") of the Merit System Protection Board ("MSPB") for investigation. 5 U.S.C. §§1212(a)(2), 1214(a)(1)(A). If there is a determination by the OSC that there are reasonable grounds to believe that the prohibited personnel action was or is to be taken, the OSC may then petition a member of the MSPB for a

*(footnote continued on next page)*

284 F.3d 135, 142 (D.C.Cir. 2002) ("[u]nder no circumstances does the WPA grant the district court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."). For these reasons, the plaintiff's whistleblower retaliation claim will be dismissed without prejudice. If the plaintiff can establish that he is or was a federal employee as defined under the statute *and* that he exhausted his administrative remedies with the CSRA prior to bringing this action, he may file a second amended complaint. However, he must be able to meet both requirements. Even then, this court's review of any such claim is very limited. An MSPB decision may only be set aside if it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §7703(c). The plaintiff should be cognizant of this very narrow scope of review in filing any second amended complaint.

Next, to the extent the plaintiff is attempting to assert a claim against the President of the United States in this paragraph, the President enjoys absolute immunity from civil liability with regard to all official actions taken

---

stay and may recommend "corrective action" to the agency involved the MSPB, and the Office of Personnel Management. 5 U.S.C. §1214(b)(1)(A)(i), (2)(B). In addition, the OSC may recommend disciplinary action against an employee who is reasonably believed to have committed a prohibited personnel practice. 5 U.S.C. §1215(a)(1)(A).

during his time in office, as well as for acts conducted "within the 'outer perimeter' of his official responsibility." *See Nixon v. Fitzgerald*, 457 U.S. 731, 751, 756 (1982) (finding that a president of the United States was entitled to absolute immunity from *Bivens* actions). There's nothing in the scant allegations of the narrative to indicate that anything the plaintiff is alleging with respect to the President occurred outside of his duties in carrying out the presidency. Therefore, the plaintiff's allegations against the President of the United States will be dismissed with prejudice.

In the second paragraph of his narrative, the plaintiff alleges financial sabotage[9] by casinos and state regulators none of which are named as defendants. The paragraph provides no allegations against any named defendant.

The plaintiff alleges in the third paragraph that, on November 6, 2024, defendants Matt Puzio, who is identified as "Hideout Lead Security,"[10] and "Hide Out Public Safety" restrained him for five (5) hours, and subsequently the Wayne County Sheriff "allegedly injected GHB." According to the plaintiff, Geisinger Hospital, which is not named as a defendant, misdiagnosed him

---

[9] In the "Legal Claims" section of his narrative, the plaintiff provides that his claims of financial sabotage relate to his constitutional violation claims.

[10] The plaintiff identifies the Hideout as a private gated community in Lake Ariel, Pennsylvania.

with "delusion" when tests indicated dehydration. The plaintiff alleges that this triggered him to suffer eleven (11) heart attacks. Based on the timing of the attack, one day after the election, the plaintiff alleges that this "confirms retaliation for Plaintiff's candidacy, as he posed a threat ("kicked his ass") against Trump/Musk-backed interests." In the "Legal Claims" section of the narrative, the plaintiff attaches the "assault" and "excessive force (5-hour restraint/injection)" to his constitutional violation claim under 42 U.S.C. §1983.

> In considering these allegations, it is well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of a federally protected right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

*Boykin v. Bloomsburg Univ.*, 893 F.Supp. 409, 416 (M.D. Pa. 1995), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Thus, in any civil rights claim brought under §1983, the plaintiff must allege and prove that each of the defendants was acting under color of law when the defendant allegedly violated the plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C.

§1983 since the statute typically requires a showing that the defendants are state actors. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Here, as security in a private gated community, there is no indication that either defendant Puzio or "Hide Out Public Safety" acted under color of state law. As such, the plaintiff does not state a valid §1983 action against them. The plaintiff's amended complaint will be dismissed as to these defendants without prejudice giving him the opportunity to demonstrate whether there are circumstances under which these defendants should be considered state actors pursuant §1983.[11]

The Wayne County Sheriff would be a state actor for purposes of §1983. However, as to the sheriff, the plaintiff's only allegation is that he "**allegedly** injected GHB." This would make it seem that the plaintiff himself is unsure whether the sheriff, in fact, injected GHB. Moreover, he provides no facts or details surrounding his claim. In order for the plaintiff to proceed, he must provide a plausible claim for relief and provide enough factual content to allow the court to reason that there is enough to allow the claim to go forward. Here, the plaintiff provides no factual allegations as to where this happened, when it happened - whether the plaintiff was being placed under

---

[11] Upon review, the plaintiff provides no allegations with respect to the named "Hide Out Attorney." However, the same rationale would apply to dismissing the plaintiff's amended complaint against this defendant.

- 11 -

arrest or whether he was already in custody, why it happened, in what capacity the sheriff was acting, etc. Without more, the court is not in a position to determine whether the plaintiff has a plausible claim which is sufficient to proceed. Thus, the plaintiff's claim against the sheriff will be dismissed without prejudice to allow him to amend his complaint and provide sufficient factual allegations for the court to assess his claim.

In the fourth paragraph, titled "Bureaucratic Obstruction and Delayed Benefits (November 2024-December 2025)", the plaintiff alleges that the IRS, which is not named as a defendant, rejected tax returns based on incomplete casino data, which denied him refunds/credits for the tax years 2023-2024. He further alleges that his application for Social Security Disability Benefits was delayed and that a "Judgment Fund claim for $25,000,000" was rejected. Also in this paragraph, the plaintiff alleges that whistleblower disclosures to a number of agencies, including the DOJ, which is named as a defendant, "bounced . . . proving obstruction." In his "Legal Claims" section, the plaintiff places these allegations along with his WPA claim. For the reasons discussed above, the plaintiff's WPA claim is dismissed without prejudice.

In the final factual paragraph, the plaintiff sets forth the impact that the above claims had on his family and his business partner and requests relief

- 12 -

on their behalf. To the extent that the plaintiff is attempting to bring any claims or seek any relief on behalf of his family members or partner, the Third Circuit has held that "a non-attorney may not represent other parties in federal court." *Murray on behalf of Purnell v. City of Phila.*, 901 F.3d 169, 170 (3d Cir. 2018). As such, any such claims or requests for relief by the plaintiff on behalf of his family members or partner will be dismissed with prejudice.

As a final matter on the plaintiff's narrative, although the plaintiff has named "Erie Insurance" as a defendant and has included a legal claim against Erie for bad faith pursuant to 42 Pa.C.S. §8371, he has provided no factual allegations providing a basis for this claim. As such, the plaintiff's complaint will be dismissed without prejudice with respect to Erie Insurance.

Moving on then to the first amended complaint dated the same day as the narrative, but filed on the following day, the plaintiff "adds" as a defendant Joseph Lavin, who is identified as a court employee of the Eastern District of Pennsylvania. The plaintiff attempts to set forth a number of claims against defendant Lavin, including a *Bivens* claim based on a violation of his Fifth Amendment due process rights, a civil RICO claim under 18 U.S.C. §§1962(c) and (d), an obstruction of justice claim under 18 U.S.C. §1503, and a whistleblower retaliation claim under 5 U.S.C. §2301(b)(8). All of these claims have as a basis the fact that Mr. Lavin's initials are on the docket entry

- 13 -

transferring the plaintiff's case from the Eastern District of Pennsylvania to this district, which the plaintiff claims is "the regulatory backyard of Defendants." The plaintiff alleges that the transfer was without notice and an opportunity to be heard and "furthered the coordinated pattern of retaliation against Plaintiff's presidential candidacy and whistleblower disclosures." Defendant Lavin is sued in his individual capacity.

The plaintiff's claims against defendant Lavin are barred by immunity. In this regard, "[c]ourt personnel are absolutely immunized from a suit for damages through quasi-judicial immunity for their 'discretionary actions,' *Wallace v. Abell*, 318 F. App'x 96, 99 (3d Cir. 2009), and 'when performing duties required by statute or at the direction of judicial authority,' *Huber v. Fudeman*, No. 23-CV-0592, 2023 WL 2405243, at *3 (E.D.Pa. Mar. 8, 2023) (collecting cases); *see also Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012) (holding that court personnel are immune from suit when conducting acts that are an 'integral part of the judicial process,' such as 'carrying out facially valid court orders')." *Talley v. Pa. Dept. of Corrections*, No. 19-CV-1589, 2024 WL 1253626, at *19 (E.D.Pa. Mar. 21, 2024). In addition, court personnel are entitled to qualified immunity for nondiscretionary acts, such as entering orders. *Id.*

Here, the basis of the plaintiff's claims against defendant Lavin is the transfer of his action from the Eastern District of Pennsylvania to this district. Defendant Lavin transferred the plaintiff's action pursuant to the order of Judge Murphy, who determined based on his review of the record that a majority of the actions underlying the plaintiff's complaint occurred in the Middle District of Pennsylvania. Because defendant Lavin transferred the action pursuant to a valid court order, he is entitled to absolute quasi-judicial immunity with respect to the claims for monetary relief brought against him.[12] The plaintiff's claims against defendant Lavin will therefore be dismissed with prejudice.

Also on March 12, 2026, the plaintiff filed a second Emergency Motion for Temporary Restraining Order (Doc. 22) and Emergency Motion for Injunctive Relief (Doc. 23). With respect to these motions, as well as the

---

[12] As a form of relief, the plaintiff further requests that the court refer defendant Lavin and another individual by the name of Fernando Benitez to the DOJ/FBI for criminal charges relating to obstruction of justice under 18 U.S.C. §1503. As discussed by Judge Schwab in her report, the plaintiff cannot seek to have criminal charges brought against defendant Lavin, or anyone else for that matter, by way of his complaint, as there is ro right to require the government to initiate criminal proceedings. *See Rodriquez v. Salus*, 623 F. App'x 588, 590 n.1 (3d Cir. 2015).

- 15 -

previously filed motions which seek preliminary injunctive relief (Docs. 3, 7),[13] such relief is an "extraordinary remedy," s*ee Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018), which "is not granted as a matter of right," *see Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). In order to be entitled to such relief, the court considers: (1) the movant's likelihood of success on the merits; (2) likelihood of irreparable harm to the movant in the absence of relief; (3) balance of the harms between the plaintiff on the one hand and the defendants on the other; and (4) the public interest. *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 178 (3d Cir. 2018) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (quotation marks omitted). As discussed by Judge Schwab, the movant **must** establish the first two of these factors in order to prevail. *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) (emphasis added). Judge Schwab found that the plaintiff has not established a reasonable likelihood of success on the merits and therefore recommends that the plaintiff's motions for emergency relief be denied. Based upon the court's discussion above, the court agrees and will adopt Judge Schwab's recommendation that the plaintiff's motions for emergency relief be denied.

---

[13] In transferring the instant action, Judge Murphy left the emergency motions filed in the Eastern District (Docs. 3, 7) to the discretion of this court. (Doc. 19).

An appropriate order shall issue.

_____
MALACHY E. MANNION
United States District Judge

**DATE:** 6/24/26

26-613-01